[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13189

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MARIO ANTWAN BREWER, JR.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:21-cr-00062-TKW-1

_____

_____

No. 22-13190

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MARIO ANTWAN BREWER, JR.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:21-cr-00053-TKW-1

_____

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

A few months after Mario Antwan Brewer, Jr., pleaded guilty to three felon-in-possession-of-a-firearm charges, he sought to withdraw his guilty pleas. The district court denied Brewer's

motion to withdraw his guilty pleas and sentenced him to 210 months' imprisonment. Brewer now appeals the district court's denial of his motion and imposition of his sentence. Because we conclude that the district court did not abuse its discretion when it denied Brewer's motion or imposed his sentence, we affirm.

## I.    BACKGROUND

In August 2021, the United States charged Brewer with two counts of possessing Smith and Wesson pistols after being convicted of a felony. A month later, the government charged him with one count of possessing a Taurus handgun after being convicted of a felony. Brewer at first pleaded not guilty but, after a change of counsel, decided to plead guilty to all three charges. In each case, he signed a statement agreeing that the government could prove that he possessed the pistols and knew he had been convicted of a felony.

The Smith and Wesson statement recounted that Brewer knowingly possessed a black Smith and Wesson pistol in December 2020. He possessed the pistol at a gas station, where a shootout between two vehicles occurred. Brewer was in one of those vehicles. Brewer also knowingly possessed the black Smith and Wesson and a tan Smith and Wesson pistol in January 2021 at his residence. The Taurus statement recounted that Brewer knowingly possessed a teal Taurus pistol in August 2021. Both statements acknowledged that Brewer knew he had been convicted of a prior felony and never obtained clemency.

A magistrate judge held a single change of plea hearing. Brewer admitted under oath that he understood the offenses' elements and agreed that the government could prove them. Brewer said he read his plea agreements, understood them, and had no questions about them. The plea agreement for the Smith and Wesson charges stated that "[a]s to each Count, Defendant faces ten years imprisonment," among other consequences. 53 Doc. 40 at 1–2.[1] The plea agreement for the Taurus charge stated that "[a]s to Count One, Defendant faces ten years imprisonment," listing other consequences as well. 62 Doc. 31 at 1–2.

The magistrate judge informed Brewer that "[f]or both Counts One and Two" in the Smith and Wesson case, he was "looking at a maximum of ten years' imprisonment," clarifying that "each of those counts carries with them those penalties." 62 Doc. 62 at 15. In the Taurus case, the magistrate judge told Brewer that he could receive "the same penalty that I've gone over with you already, which is that you face a maximum term of ten years of imprisonment" and other consequences. *Id.* at 20. Brewer understood and had no questions about either case. He said he was satisfied with his attorney.

The magistrate judge recommended that the district court accept Brewer's guilty pleas, and the district court did.

---

[1] "53 Doc." numbers refer to the district court's docket entries in case 3:21-cr-0053. "62 Doc." numbers refer to the district court's docket entries in case 3:21-cr-0062.

A probation officer prepared a single draft presentence investigation report for the two cases. The draft applied a base offense level of 33 because Brewer used or possessed a firearm in connection with another firearm offense, reasoning that his involvement in a conspiracy or solicitation to commit murder could be established with reasonable certainty. After knocking off three points for acceptance of responsibility, the draft calculated a total offense level of 30. It determined his criminal history category to be VI based on his prior convictions, some of which involved violent crimes. The total guideline range was 168 to 210 months' imprisonment.

Brewer objected to the draft, denying that he participated in a shooting and denying that he possessed firearms in connection with another offense. He argued that his total offense level should have been 25 instead. The government also responded to the draft. It argued that at least one point should be restored because Brewer no longer accepted responsibility for his involvement in the shooting. The final presentence investigation report retained the base offense level of 33 and removed the third acceptance of responsibility point, calculating a total offense level of 31, a criminal history category of VI, and a guideline range of 188 to 235 months.

Before sentencing, an expert evaluated Brewer. The expert found that Brewer had an IQ of 73, which fell in the 4th percentile and showed an impaired range of functioning. The expert scored Brewer's reading comprehension at about a fourth-grade level, which fell in the 3rd percentile. The expert also determined that

Brewer showed average legal knowledge. The expert concluded that "Brewer appear[ed] competent to proceed" and "demonstrated sufficient rational and factual knowledge of the allegations and appeared to have sufficient present ability to assist counsel in his defense." 62 Doc. 54-1 at 5.

Five days before Brewer's sentencing, he moved to replace his counsel, Ronald Johnson. The district court concluded that Johnson had not been ineffective but granted Brewer's motion, citing the breakdown in the relationship. The district court rescheduled sentencing.

A week before Brewer's new sentencing date, he moved to withdraw his guilty pleas. He claimed that Johnson had been ineffective. The district court denied his motion.

At sentencing, the district court sustained Brewer's objection to the presentence investigation report's calculation of his base offense level. The court concluded that the government had failed to prove by a preponderance of the evidence that Brewer had engaged in conspiracy or solicitation to commit murder. Although the court found that Brewer shot the gun at the gas station, it reasoned that the evidence failed to show that Brewer went to the gas station "with the intent to kill . . . or assault . . . with that firearm." 62 Doc. 89 at 55. The court therefore calculated Brewer's offense level as 28. But the court refused to apply any reduction to Brewer's offense level for acceptance of responsibility. The district court determined that Brewer's total offense level of 28 and criminal history category of VI yielded a guideline range of 140 to 175 months.

The district court then considered the sentencing factors from 18 U.S.C. § 3553(a).[2] It noted that mitigating factors included Brewer's rough childhood, lack of education, and "intellectual challenges." 62 Doc. 89 at 74. The court also noted aggravating factors, such as his criminal history, failure to take responsibility, rapid rearmament upon release, and willingness to endanger the public with a gun. Based on these factors, the district court decided that Brewer resembled an Armed Career Criminal Act offender, who would receive a 15-year mandatory minimum. The district court therefore varied upward and sentenced Brewer to 70 months on each count, totaling 210 months. Brewer appealed.

## II.    STANDARDS OF REVIEW

We review a district court's denial of a request to withdraw a plea for an abuse of discretion. *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006). The denial must be "arbitrary or

---

[2] Under § 3553(a), a district court must impose a sentence "sufficient, but not greater than necessary, to comply with the [statute's] purposes." 18 U.S.C. § 3553(a). These purposes include crafting a sentence that reflects the offense's seriousness; promotes respect for the law; provides just punishment; deters criminal conduct; protects the public from the defendant's future criminal conduct; and effectively provides the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The court must also consider the offense's nature and circumstances, the defendant's history and characteristics, the kinds of sentences available, the applicable guideline range, the Sentencing Commission's pertinent policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

unreasonable" for an abuse of discretion to exist. *Id.* (internal quotation marks omitted).

We also use an abuse of discretion standard to review a sentence's substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 41 (2007). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation marks omitted). Brewer bears the burden of showing the sentence is unreasonable because he is challenging it. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). We apply this standard even when the district court sentences a defendant above the guideline range, as the district court did here. *See Gall*, 552 U.S. at 51.

## III.    DISCUSSION

We first address whether the district court abused its discretion when it denied Brewer's motion to withdraw his guilty pleas. We then discuss whether the district court abused its discretion when it sentenced Brewer to 210 months in prison.

### A.    The District Court's Denial of Brewer's Withdrawal Motion Was Not an Abuse of Discretion.

The district court did not abuse its discretion when it denied Brewer's motion to withdraw his guilty pleas. Brewer can withdraw his pleas if he shows "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(b). To determine whether

Brewer has shown a "fair and just reason," we consider the totality of his pleas' circumstances. *United States v. Buckles*, 843 F.2d 469, 471–72 (11th Cir. 1988) (internal quotation marks omitted). The circumstances include "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Id.* at 472 (citation omitted). We may also consider the timing of his request. "The longer the delay," "the more substantial the reasons must be." *Id.* at 473.

When we consider the totality of the circumstances, we presume that the statements Brewer made under oath during the plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). We leave it to the district court to determine "[t]he good faith, credibility[,] and weight" of Brewer's assertions in support of his withdrawal motion. *Buckles*, 843 F.2d at 472.

Although four considerations guide our analysis, the first two control the outcome here. When a defendant received close assistance of counsel and entered his plea knowingly and voluntarily, the district court need not give considerable weight or attention to the remaining *Buckles* factors. *United States v. Gonzales-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987). We, too, need not consider them because after reviewing the first two *Buckles* factors and considering the timing of Brewer's motion, we conclude that the district court did not abuse its discretion when it denied the motion.

On the first factor, the district court did not err when it concluded that counsel provided Brewer with close and adequate assistance. During his plea colloquy, Brewer acknowledged that he had been able to ask Johnson questions about the pleas; Johnson had answered every question; he had no questions for the magistrate judge; and he understood the plea agreements and their consequences. Brewer found Johnson's representation satisfactory.

Brewer argues now that Johnson failed to discuss a double jeopardy defense with him. This failure, he asserts, rendered Johnson ineffective and meant that his assistance was neither close nor adequate. This argument fails, however, because the ineffective assistance must alter the judgment. *See Strickland v. Washington*, 466 U.S. 668, 692 (1984); *see also United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (applying *Strickland* to guilty pleas based on alleged ineffective assistance of counsel). The double jeopardy argument leaves the judgment unaltered because it lacks merit.

Although Brewer points out that both counts in the Smith and Wesson case charged him "with possessing the same black 9mm Smith and Wesson pistol on dates one month apart," Appellant's Br. 15, the second count included the tan Smith and Wesson pistol. Count One involved only Brewer's possession of the black pistol at the gas station in December. Count Two involved Brewer's possession of the black pistol and his possession of the tan pistol at his house in January. Because Brewer "possessed different weapons at different times or places, the government may treat them as separate units of prosecution and charge multiple counts"

without violating double jeopardy principles. *United States v. Jones*, 601 F.3d 1247, 1259 (11th Cir. 2010).

On the second factor, the district court did not err when it determined that Brewer entered his pleas knowingly and voluntarily. The magistrate judge apprised Brewer of the rights he waived by pleading guilty. And after she walked through the offenses' elements, Brewer swore that he understood them and that the government could prove them. The magistrate judge found that Brewer entered into the plea agreements voluntarily and of his own will.

Brewer argues that his pleas were not knowing and voluntary because he never understood that his cases were separate. He also argues that he never realized that his sentences could be imposed consecutively and that he faced a total maximum of 30 years in prison. But the magistrate judge repeatedly mentioned that the two plea agreements concerned the two cases. And both the magistrate judge and the plea agreements themselves clarified that the penalties attached to each count separately. Although the expert found that Brewer has a low IQ and poor reading skills, the expert also found that he has average legal knowledge and showed no confusion or misunderstanding about the pleas. On these facts, Brewer knowingly and voluntarily entered into the plea agreements.

Although not part of the four-factor test, Brewer's timing bolsters our conclusion that the district court did not err. "A swift change of heart is itself strong indication that the plea was entered

in haste and confusion." *Gonzales-Mercado*, 808 F.2d at 801 (internal quotation marks omitted). But a delayed filing may indicate ulterior motives. Brewer moved to withdraw his pleas six months after entering them. As the district court determined, this timing suggests that Brewer experienced "a case of 'buyer's remorse'" after being "faced with the reality that a substantial prison sentence [was] forthcoming." 62 Doc. 68 at 8; *see also Gonzales-Mercado*, 808 F.2d at 801 (noting that timing could suggest "that the appellant withdrew his plea in anticipation of a harsher sentence than that recommended in his plea agreement"). Even though Brewer now argues that his reading level, intelligence, and poor relationship with his counsel should weaken our reliance on timing, the half-year delay indicates that he entered the original pleas without haste or confusion.

As we noted above, we need not consider the third and fourth *Buckles* factors, judicial resource conservation and government prejudice, to decide this appeal. The totality of the circumstances show that the district court did not abuse its discretion when it denied Brewer's motion to withdraw his pleas.

## B.    The District Court's Imposition of a 210-Month Sentence Was Not an Abuse of Discretion.

The district court did not abuse its discretion when it sentenced Brewer to 210 months in prison. Brewer argues that the district court abused its discretion when it imposed the upward variance because it gave significant weight to its finding that Brewer fired a gun during the gas station shootout, an improper factor. *See*

*Irey*, 612 F.3d at 1188 (holding that a district court abuses its discretion when it "gives significant weight to an improper or irrelevant factor").

Brewer's argument fails because it was not improper for the district court to consider that Brewer fired the gun he illegally possessed. That consideration goes to the firearm possession's nature and circumstances and the need to protect the public, both statutory factors in 18 U.S.C. § 3553(a) which "support the sentence in question." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

Brewer also argues that his sentence is substantively unreasonable because the district court varied upward "to the same guideline range which would have applied if the government had proven that Brewer possessed the firearm in connection with an aggravated assault and/or attempted murder." Appellant's Br. 20. But the district court sustained Brewer's objections to the presentence investigation report and reduced Brewer's base level offense from 33 to 28 because the government failed to prove by a preponderance of the evidence that Brewer had engaged in conspiracy or solicitation to commit murder.

Rather than relying on the guideline range as calculated in the presentence investigation report, the district court considered Brewer's current guideline range, mitigating factors, and aggravating factors to arrive at the sentence. The district court varied upward because of Brewer's extensive criminal history, including violent crimes; his failure to take responsibility; and his repeated

rapid rearmament upon release. The district court may assign great weight to these factors. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). The district court therefore committed no "clear error of judgment" in varying upward. *Irey*, 612 F.3d at 1189.

Despite the district court's acknowledgment that the sentence "happens to work out to be [the] midpoint of the guideline range that was reflected in the original [presentence investigation report]," 62 Doc. 89 at 80, the court varied upward because of Brewer's extensive criminal history, not because it relied on conduct the government failed to prove by a preponderance of the evidence. *United States v. Washington,* 714 F.3d 1358, 1361 (11th Cir. 2013) (requiring that the government prove facts supporting an enhancement by a preponderance of the evidence). The facts here do not leave us "with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Shaw,* 560 F.3d 1230, 1238 (11th Cir. 2009) (internal quotation marks omitted).

## IV.    CONCLUSION

The district court did not abuse its discretion when it denied Brewer's withdrawal motion or when it imposed Brewer's sentence. We therefore affirm.

**AFFIRMED.**